Alan P. **DAMIANO**, et al., Plaintiffs,

v.

George G. **MATISH**, et al., Defendants.

No. G86–458 CA5.

United States District Court,
W.D. Michigan.

Oct. 2, 1986.

---

Milton L. Chappell, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., Sam F. Massie, Jr., Allaben, Massie, Vanderweyden & Timmer, Grand Rapids, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen. by Todd B. Adams, Asst. Atty. Gen., Tort Defense Div., Lansing, Mich., for defendants.

Kleiner & Fayette, A. Robert Kleiner, Grand Rapids, Mich. by M. Elizabeth Bunn, Michael B. Nicholson, Daniel W. Sherrick, Detroit, Mich., for Intern. Union, UAW, Local 6000.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiffs are employees of the State of Michigan in either the Human Services or Administrative Support bargaining units. They are not members of the representative union, defendants International Union, United Automobile, Aerospace and Agriculture Implement Workers of America, UAW, and its Local Union 6000 ("UAW" or "union"). Plaintiffs seek declaratory and injunctive relief to prevent and redress the deprivation under color of state law of rights guaranteed under the First and Fourteenth Amendments. Plaintiffs allege a violation of the constitutional requirements enunciated by the Supreme Court in *Chicago Teachers Union, Local No. 1 v. Hudson,* —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); such requirements concern the collection of agency fees by a union from non-union employees within the represented bargaining unit.

The Court issued a preliminary injunction on July 7, 1986, preventing the defendant state/employer ("State") from discharging any non-union employees who have not signed an authorization for the deduction of representation service fees from their wages and also enjoining the union from attempting to enforce the deduction of such fees under the security clause of the contract. The contract between the State and the union became effective on January 8, 1986.

Plaintiffs now move for certification of a class of all nonmembers of the defendant union employed by the State of Michigan within the Human Services and Administrative Support bargaining units who have not signed an authorization for the deduction of representation service fees from their wages. Cross-motions for summary judgment addressing the merits of the case are also before the Court.

## CLASS ACTION

The party moving for class certification has the burden to show that all the prerequisites for certification are met. *Senter v. General Motors Corp.,* 532 F.2d 511, 520 (6th Cir.1976). The requirements of Fed.R.Civ.P. 23(a) are summarily referred to as 1) numerosity, 2) commonality, 3) typicality, and 4) fair and adequate representation. Further factors are delineated in Fed.R.Civ.P. 23(b)(1)–(3).

Plaintiffs satisfy all the prerequisites. Plaintiffs state that the class consists of 200 members and joinder is therefore impractical. The State does not contest the size of the proposed class. There are common questions of law and fact to all members of the class, and the claims and defenses of the class are the same as those of the representative parties. All members of the class are in the same position, i.e., if they do not sign the authorization card for the deduction of agency fees, then they will be terminated from their employment. The procedural safeguards provided in *Hudson* are applicable not only to the named plaintiffs but to all members in the potential class. Further, there is no question that the representative parties do, and will, fairly and adequately protect the interests of the potential class members. Plaintiffs' attorneys are a charitable legal aid organiza-

tion that provides legal assistance to employees in cases involving similar or identical legal interests as those involved in this action.

Plaintiffs have shown that they satisfy subdivision 23(b)(2) requirements in that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). It is clear that the constitutional mandates of *Hudson* apply to all non-union employees who have not signed the authorization deduction card and that any violation of these constitutional requirements by the State and UAW affect all nonmembers, not just the named plaintiffs. Therefore, declaratory and injunctive relief is appropriate for the entire class.

Although the State [1] presents argument that it is unnecessary to certify a class when the declaratory or injunctive relief sought will accrue to the benefit of similarly situated persons, *Curry v. Dempsey*, 520 F.Supp. 70, 75 (W.D.Mich.1981), *rev'd. on other grounds* 701 F.2d 580 (6th Cir.1983), the Court will certify the class as requested.

It is within the Court's discretion whether to certify a class once the requirements of 23(a) and (b) have been met. *See Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398 (6th Cir.1980). There is no "need" requirement in the sense defendants contend.

The Court recognizes that the declaratory ruling will automatically affect all similarly situated state employees as the named plaintiffs. However, it would be inappropriate to deny certification based solely on an apparent lack of necessity without a thorough analysis of possible detrimental effects absent certification. If, for example, the UAW were to prevail on the merits and a subsequent appeal reversed the decision, it is possible that similarly situated persons as plaintiffs—fired for failure to sign the authorization card—conceivably would not be reinstated. Moreover, the Court has treated this case as a class action since its inception as evidenced by the scope of the preliminary injunction.

Since the requirements of Fed.R.Civ.P. 23(a) and (b)(2) have been satisfied, the Court certifies the class. Members of the class are those nonmembers of the defendant union employed by the State of Michigan within the Human Services and Administrative Support bargaining units who have not signed an authorization for the deduction of representation service fees from their wages.

## SUMMARY JUDGMENT

All parties have agreed that the issue before the Court does not involve disputed facts but involves the interpretation and application of *Hudson* to the union's Agency Fee Payer Objection Policy. Cross-motions for summary judgment have been filed.

As stated previously, plaintiffs' class seeks declaratory and injunctive relief alleging the union's Policy does not comply with *Hudson*. The union contends its Policy fully complies with the constitutional requirements of *Hudson* according to its interpretation. The State does not address the merits of *Hudson* but contends that permanent injunctive relief is not appropriate as the relief would not benefit the class and would penalize the defendants.

## FACTUAL BACKGROUND

In September and November, 1985, the UAW was elected as the exclusive bargaining representative of the employees in the State of Michigan's Human Service and Administrative Support bargaining units. The UAW replaced the previous labor organization, the Michigan State Employees Association. Negotiations ensued and a collective bargaining agreement was ratified by the union members and became effec-

1. Intervening defendant union did not file an objection to plaintiffs' motion for class certifica- tion.

tive January 8, 1986. Local agreements covering the department groups within the two units were then negotiated.

The master collective bargaining agreement contains a union security clause requiring non-union members to pay a representation service fee as a condition of employment. The fees, as well as union dues, were to be paid commencing February 8, 1986. At various times after the effective date of the agreement, letters were sent to members of the two units indicating that the UAW was the exclusive representative of the units and that the employees were required to pay either union dues or service fees. The cards authorizing either deduction were to be submitted to the personnel office by a certain date. The employees were informed that pursuant to the agreement failure to sign and submit a card could result in discharge. Neither the amount of the service fees nor an explanation was included in the letter.

In March, 1986, the Supreme Court decided *Hudson* which required certain procedural safeguards in order to collect agency fees from non-union employees.[2] In May, 1986, the union sent letters to all non-union members in the two units indicating that the union was in the process of establishing procedures consistent with the *Hudson* requirements. The letter also gave instructions as to how objections were to be filed and to request information regarding union expenditures. This letter also informed nonmembers that their service fees would be placed in a separate interest-bearing account if they objected. In addition, the letter stated that the service fees and union dues were identical in amount.

The Plaintiffs have either refused or neglected to sign the authorization cards permitting service fee deductions. As a consequence, the State notified plaintiffs that their employment would be terminated if the authorization cards were not signed. The Court has temporarily enjoined the State from terminating plaintiffs pending a decision on the summary judgment motions.

THE POLICY

On June 23, 1986, the union adopted the Agency Fee Payer Objection Policy. This Policy was subsequently amended by replacing the Public Review Board with the American Arbitration Association ("AAA") as the final decisionmaker in the appellate process.

The Agency Fee Payer Objection Policy, in summary, permits the union to collect service fees from non-union members in an amount equal to dues paid by union members.[3] Each year a review of the previous year's expenditures is made to determine the amount of costs expended on exclusive and non-exclusive representation activities. The results of this analysis is made available to any non-union member who requests this information.

A non-union member who objects to his fees being used for non-collective bargaining purposes may file an objection. The union is permitted to collect such fees from the objector but they must be placed in an escrow account.

When the union prepares its report in April of the following year, the objector is refunded, with interest, his pro rata share of fees expended for non-exclusive representation purposes. If the objector disagrees with the union's determination of the refunded amounts, he may appeal. The appeal first is heard by the International Executive Board of the UAW. If the objector is still dissatisfied a final appeal is heard by the AAA. During the appellate process, the disputed fees remain in escrow.

It is clear that the union's Policy provides for a 100% escrow of funds if timely objection is made. No fees are used for any purpose until there has been a com-

---

**2.** It is important to note that some letters informing employees of their obligations to pay union dues or services fees as a condition of employment were sent after *Hudson* was decided.

**3.** *See* Appendix A.

plete accounting and exhaustion of the appellate process. If timely objection is not filed, the union may use the fees without restriction. Upon conclusion of the appellate process, a final distribution of the fees, if appropriate, is made to the objector.

ANALYSIS

■ The question presented in this case is whether the procedures adopted by the UAW adequately protect the legitimate constitutional rights of non-union employees. In short, the Court must have as its objective the prevention of "compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of the collective bargaining activities." *Hudson,* at 1074 [citing *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1971)]. In order to accomplish this objective, such procedures at a minimum must include (1) "an adequate explanation of the basis for the fee," (2) "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker," and (3) "an escrow for the amounts reasonably in dispute while the challenges are pending." *Hudson,* at 1078.

The Court stated these procedural safeguards are necessary for two reasons.

> First, although the government interest in labor peace is strong enough to support an "agency shop" notwithstanding its limited infringement on nonunion employees' constitutional rights, the fact that those rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement. Second, the nonunion employee—the individual whose First Amendment rights are being affected— must have a fair opportunity to identify the impact of the governmental action on his interests and to assert a meritorious First Amendment claim. *Id.,* at 1074 (footnotes omitted).

Since the infringement is on the employee, the union has the burden of justifying union expenditures for collective bargaining, contract administration, and grievance adjustment ("costs of exclusive representation"). *Id.,* at 1075–76.

The UAW Policy has minimized the risk that non-union employees' contribution would be used for impermissible purposes. In fact, the risk of such use has been entirely eliminated since 100% of the funds, disputed and undisputed, is escrowed until there has been a final decision by an impartial decisionmaker. This procedure is in full accord with *Hudson.* Likewise, the provisions of the Policy and the procedures adopted by the UAW provide the non-union employees adequate justification for its deduction of the fees.

The union's Policy itself explains to the non-union member why the agency fee is identical in amount to the dues paid by union members. The Policy makes clear that agency fees will not be spent by the union, the fees are escrowed if an objection is filed, and an appropriate refund, with interest, will be made.

The Policy also provides the non-union employee a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker.

The Policy provides for appeal to the International Executive Board of the UAW and the AAA. Although argument could be made that the International Executive Board is not the impartial decisionmaker required by *Hudson,* final appeal to AAA satisfies this requirement. There is no question that the AAA is an impartial decisionmaker. The AAA has promulgated specific rules for determining agency fee challenges and selects an impartial arbitrator experienced in labor law. Although plaintiffs challenged the impartiality of the AAA and requested a continuance to take further discovery, the Court finds sufficient information was provided to ascertain the impartiality of the AAA.

The union's Policy also gives the non-union employee a reasonably prompt opportunity to challenge the union's figures. Although the determination of the chargeable amounts is four months after the close of

the fiscal year, the entire appellate process must be completed within 120 days from the initial appeal. Since the 100% escrow policy the union has adopted insures against improper use of the non-union member funds, the appellate process is not unreasonable or, indeed, unconstitutional.

Finally, the Policy provides for an escrow of funds reasonably in dispute while challenges are pending. Since the union's Policy provides for a 100% escrow until the appellate process is exhausted, there is full compliance with *Hudson*.

For all of the reasons stated, this Court holds that the union's Agency Fee Payer Objection Policy fully complies with the constitutional requirements of *Hudson*.

RELIEF

There remains the issue of whether the union should be permitted to retroactively collect the service fees from plaintiffs and other members of the class as certified by the Court. The union has filed a counter-claim seeking recovery of these fees. In addition, there is the question of what procedures should be put into effect to collect the prospective service fees as permitted by this opinion.

The Court desires a hearing on these and other related matters so that none of the parties is subjected to any undue hardship. Therefore, the hearing will be held on Friday, October 10, 1986, at 10:30 A.M. for this purpose.

The temporary injunction remains in effect until the above date as to plaintiffs and class members.

APPENDIX A

**AGENCY FEE PAYER
OBJECTION POLICY**

International Union, UAW ("UAW") has approved the following Policy governing objections by UAW-represented Michigan public employee agency fee payers, in the State of Michigan Classified Service, to the expenditure of their Service Fees for purposes not related to the costs of exclusive representation.

1. The Service Fee paid to UAW by non-UAW members shall be equal to the membership dues for UAW members in the same bargaining unit.

2. The amount of the Service Fee, and a copy of this Policy, shall be distributed by the UAW upon implementation of this Policy, and each January 15th hereafter, to all agency fee payers in the unit(s) to which it applies.

3. Any non-member agency fee payer shall have the right to object to the expenditure of his/her Service Fee for purposes not attributable to the costs of exclusive representation by filing such objection in writing, addressed to Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214. Such objection shall be filed during the time period specified in Paragraph 7 herein.

4. Upon filing of such objection, the UAW will immediately deposit an amount equivalent to the Service Fees of the objector, for the month of filing and for all of the months following filing of the objection that remain in the UAW's fiscal year (which is the calendar year), in a separate interest-bearing account carried by the International Union, and will not expend such amount thereafter for any purpose, except as set forth herein. The interest rate with respect to the account will be eight and one-half percent for the UAW's 1986 fiscal year, and will be appropriately adjusted by the UAW for each new fiscal year to the prime rate of the Comerica, Inc. Bank, Detroit, Michigan on January 1st of each such new fiscal year.

5. At the end of each fiscal year, the UAW's expenditures shall be reviewed in order to establish, on a pro rata basis, what portion of the Service Fees charged to each agency fee payer in the unit(s) to which this policy applies were expended on matters not related to the costs of exclusive representation. The International Union, UAW will then prepare, by the 1st day of April following the close of the fiscal year, a report setting forth the results of this review with respect to that previous fiscal year. Such report will thereafter be made

available to any agency fee payer who requests a copy. Such requests should be made in writing, by certified mail, return receipt requested, addressed to: Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson, Detroit, Michigan 48214.

6. Upon issuance of the report, the UAW will pay to each person who has timely filed an objection under this policy his/her pro rate share of the amount of Service Fees which have been expended on matters not related to the costs of exclusive representation (such pro rata share shall hereafter be referred to as the "Amount"), plus accrued interest.

7. Any agency fee payer who desires to file an objection pursuant to Paragraph 3 of this Policy shall file such objection within the first 30 days of the UAW's fiscal year, except that newly hired agency fee payer employees shall file such objection within the first 30 days following the application to them of any union security provision of any collective bargaining agreement. During fiscal year 1986 only, objections may also be filed no later than 30 days following distribution of this Policy pursuant to Paragraph 2 above.

8. Any agency fee payer who has timely filed such an objection pursuant to this Policy, and who claims that the Amount is not in accord with the standard set forth in Paragraph 5 of this Policy, may appeal the UAW's determination of the Amount. Such an appeal shall be commenced by filing such an appeal in writing with: Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214. Any such appeal must be filed no later than the 1st day of May following the issuance of the report required by Paragraph 5 of this Policy. The appeal shall state the basis for the claim that UAW's determination of the Amount is not in accord with the standard set forth in Paragraph 5 of this Policy.

9. An appeal filed under Paragraph 8 of this Policy shall first be considered by the International Executive Board of the UAW or its designee, which shall have the discretion to consolidate all appeals, and to require a hearing in determining the appeals, or to determine appeals in such other manner as it deems appropriate. In all cases, the International Executive Board or its designee shall issue its determination as to the appeal within 60 days of the filing of the appeal, or, in the case of consolidated appeals, within 60 days of the filing of the last appeal so consolidated.

10. An appellant dissatisfied with the determination of the International Executive Board may further appeal that determination. Such an appeal must be filed, in writing, no later than 15 days after the issuance of the decision of the International Executive Board or its designee under Paragraph 9 of this Policy, or else such decision shall be final and binding. Any such appeal must be addressed to: Agency Fee Payer Objection Administration, Post-IEB Appeals, 8000 East Jefferson Avenue, Detroit, Michigan 48214.

11. All appeals filed pursuant to Paragraph 10 of this Policy will be referred to an impartial decisionmaker. Until further notice, all such appeals shall be referred by the UAW to the American Arbitration Association, pursuant to its "Rules for Impartial Determination of Union Fees effective June 1, 1986." The UAW will have the authority to have any or all such appeals consolidated before the impartial decisionmaker selected. The impartial decisionmaker shall issue his or her determination as to the appeals within 60 days of the filing of the last appeal so consolidated. The impartial decisionmaker's jurisdiction shall be limited to determining whether the Amount determined by the UAW with respect to the appellants is in accord with the standard set forth in Paragraph 5 of this Policy. The determination of the impartial decisionmaker shall be final and binding.

12. All Service Fee amounts of objectors not paid to them pursuant to Paragraph 6 of this Policy will remain in the account referred to in Paragraph 4 of this Policy until the close of the period for filing an appeal to the International Executive

Board set by Paragraph 8 of this Policy. If an objector timely files such an appeal, the amounts in the account referred to in Paragraph 4 of this Policy with respect to such objector will remain in the account until final resolution of the appeal by the International Executive Board or any further appeal to the impartial decisionmaker, as the case may be, and then will be distributed to the UAW and the objector in accordance with the final decision on the appeal, with accrued interest. If no such appeal is filed by an objector with the International Executive Board within the time period established by Paragraph 8 of this Policy, then all remaining monies in the account with respect to the objector will be distributed to the UAW.

13. For the purposes of this Policy, "file", "filing", and/or "filed" means receipt by the recipient designated herein, after mailing by first-class certified mail, return receipt requested.

14. UAW reserves the right to further amend or modify this Policy, as it deems appropriate, to comply with then-applicable law, or to terminate this Policy, if permitted by then-applicable law.

### ORDER

For the reasons stated in the Opinion of the Court dated the 2nd day of October, 1986,

IT IS HEREBY ORDERED that the plaintiff's Motion to Certify Class is granted.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by defendant-intervenor UAW is granted and the Court holds that the union's Agency Fee Payer Objection Policy fully complies with the constitutional requirements of *Hudson.*

IT IS FURTHER ORDERED that the parties appear for a hearing on Friday, October 10, 1986, at 10:30 A.M. to resolve the remaining issues as set forth in the Court's Opinion.

The temporary injunction remains in effect until the above date as to plaintiffs and class members.

IT IS SO ORDERED.