Alan P. DAMIANO, et al. (Certified Class Members), Plaintiffs-Appellants,

v.

George G. MATISH, et al., Defendants-Appellees,

International Union, UAW, and Local 6000, Intervening Defendants-Appellees.

No. 86–2048.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1987.

Decided Oct. 8, 1987.

---

Milton L. Chappell, argued, Hugh L. Reilly, National Right to Work Legal Defense Foundation, Springfield, Va., Sam Massie, Jr., Allaben, Massie, Vander Weyden, and Timmer, Grand Rapids, Mich., for plaintiffs-appellants.

Michael B. Nicholson, argued, Daniel W. Sherrick, Mary Elizabeth Bunn, Detroit, Mich., Todd B. Adams, argued, Gary P. Gordon, Lansing, Mich., A. Robert Kleiner, Kleiner & Fayette, Grand Rapids, Mich., for defendants-appellees.

Before LIVELY, Chief Judge, and ENGEL and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiffs, a class consisting of "all non-members of the defendant union employed by the State of Michigan within the Human Services and Administrative Support bargaining units who have not signed an authorization for the deduction of representation service fees from their wages," appealed from the district court's order granting summary judgment to defendant-intervenors the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW or "the union") in this action challenging the constitutionality of procedures implemented by the UAW for computing and collecting of agency shop fees from non-union members.[1]

In late 1985, the UAW was elected as the exclusive bargaining representative of the employees in the State of Michigan's Human Services and Administrative Support bargaining unit (the "bargaining unit"). Following the election, the UAW negotiated a collective bargaining agreement with the State of Michigan (the "collective bargaining agreement"). The collective bargaining agreement, which became effective on January 8, 1986, authorized the collection of an agency shop fee from non-members of the union "in an amount not to exceed the regular biweekly dues uniformly assessed against all members of the Union."

After the agreement between the State and the UAW became effective, the State noticed all employees within the bargaining unit by letter (1) that they were required to either become a member of the union or authorize the deduction of a representation fee; (2) that they must promptly execute either the "union dues authorization card" or a "representation fee authorization card," and (3) that the UAW could request the termination of their employment if they did not execute and submit either a "union dues authorization card" or a "representation fee authorization card." Neither the amount of the service fee to be deducted nor an explanation of the manner in which the fee was to be computed was included in the State's letter.

On March 4, 1986, the Supreme Court announced its decision in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), which defined the procedural safeguards requisite to the collection of agency shop fees. In early to mid May, 1986, approximately two months subsequent to the *Hudson* decision, the union notified all non-union members in the bargaining unit by letter (1) that the representation fee to be assessed against all non-union members was "equal to the dues uniformly required of all members of UAW Local 6000"; and (2) that a procedure would be developed by which employees would be permitted to challenge expenditures as not directly attributable to the costs of exclusive representation.[2] The letter further directed that objections to expenditures not directly attributable to costs of exclusive representation will be required to be submitted to the local union within 14 days via certified mail, return receipt requested. The letters addressed to those individuals who had refused to execute a "representation fee authorization card" also incorporated the following threat of discharge for failure to execute an authorization form:

---

**1.** The Supreme Court has explained that "[u]nder an 'agency shop' arrangement, a union that acts as exclusive bargaining representative may charge non-union members, who do not have to join the union or pay union dues, a fee for acting as their bargaining representative." *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 303 n. 10, 106 S.Ct. 1066, 1074 n. 10, 89 L.Ed.2d 232 (1986) (citing R. Gorman, *Basic Text on Labor Law* 642 (1976)).

**2.** The text of the letter stated that "in accordance with the applicable law, the union is in the process of establishing an agency fee objection procedure for public employer bargaining units. This procedure will resolve properly raised objections by agency fee payers to that fraction of the representation service fee spent for purposes not attributable to the costs of exclusive representation. The service fees of objecting employees will be placed in an interest-bearing escrow account until the procedure is established."

As you are aware from the notice already provided to you by the Employer, failure to pay the lawful representation service fee will result in your permanent discharge from state employment in accordance with the Collective Bargaining Agreement. You will soon receive additional notice that the State will discharge you for your continued failure to either become a UAW member or sign, date and submit an Authorization for Deduction of Representation Service Fee.

Damiano, the named plaintiff, had refused to execute an authorization form permitting the deduction of the representation service fee, as had other members of the plaintiff class. The State's personnel department informed Damiano that in the event he refused to file the requisite authorization card by June 11, 1986, his employment with the State would be terminated effective June 19, 1986. In response to the State's letter, Damiano initiated this action on June 9, 1986, naming as defendants the State and several State officers. Damiano charged that the attempt by the State to enforce the agency shop clause infringed his First and Fourteenth Amendment rights "to pay for only his pro rata share of the union's costs of collective bargaining, contract administration and grievance adjustment with his employer" and "to be provided with precollection procedures which will ensure that none of his fees are spent for improper purposes."

On June 11, 1986, Damiano amended his complaint to include allegations on behalf of a class of individuals who were "non-members of UAW employed by the State within the Human Services and Administrative Support Bargaining Units, who have not signed an authorization for the deduction of representation service fees from their wages."[3] The amended complaint petitioned for declaratory and injunctive relief enjoining the State from terminating the employment of any class members and from taking further action to enforce the agency shop provisions of the collective bargaining agreement prior to the implementation of procedures which complied with the teachings of the Supreme Court in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).

The union filed, with the district court, a motion to intervene which was granted by the trial court on June 23, 1986 and thereafter filed a copy of its "Agency Fee Payer Objection Policy" (the policy), which had been developed subsequent to the initiation of this action. On July 8, 1986, the district court entered an order granting plaintiffs a preliminary injunction restraining defendants "from terminating the employment and/or taking any acts of any kind whatever to cause the termination of the plaintiffs and/or the class members for failure to pay or authorize the deduction of union dues."

Following the submission of cross-motions for summary judgment, the UAW amended its "Agency Fee Objector Policy" (the amended policy). In its amended form, the policy provided that final appeal from any determination of the union pursuant to the internal review provisions of the policy would lie with the American Arbitration Association pursuant to its "Rules for Impartial Determination of Union Fees effective June 1, 1986" (AAA). The UAW filed the amended policy with the court.[4]

In addition to having reaffirmed the rigid and protracted procedures imposed upon objecting non-union members, the amended policy set forth (1) the amount of the service fees to be collected from objecting non-union members and (2) the method to be implemented by the union for rebating to properly objecting non-union employees their proportionate share of any monies expended for activities outside of collective bargaining, with interest. The amended policy stated that "[t]he Service Fee paid to UAW by non-UAW members shall be equal to the membership dues for UAW members in the same bargaining unit." Thus, the UAW had elected to charge objecting non-

---

**3.** The district court granted plaintiff's motion to certify the class on October 2, 1986. *Damiano v. Matish*, 644 F.Supp. 1058 (W.D.Mich.1986).

**4.** A copy of the amended policy is attached hereto as exhibit A.

union members a service fee equal to the amount of dues paid by union members, rather than employing the "advanced reduction of dues" method of calculating the fee.[5]

Briefly summarized, the policy adopted on June 23, 1986 by the union and as subsequently amended permitted the union to collect service fees from non-union members in an amount equal to dues paid by union members. Non-union members were to be notified of the amount of the annual assessment by not later than January 15th of each year; however, the imposed service fees would always equal the dues paid by union members and would not be calculated in accordance with the "advance reduction of dues" formulation suggested by the Supreme Court in *Hudson*. A non-union member could enter an objection to "the expenditure of his/her service fee for purposes not attributable to the costs of exclusive representation." All such objections were to be filed in writing with the International Union, UAW, in Detroit, Michigan by not later than January 30th each year, by first class, certified mail, return receipt requested. The objection was required to be renewed each year in accordance with the previously prescribed procedure.

The UAW, *upon receiving notice of the* objection, would deposit at the end of each month an amount equivalent to the service fee paid by the objector into a separate interest bearing account carried in the name of the International Union. On or before April 1st of the year following the objection (at least 14 months after the initial objection), the UAW would issue an internally generated and unverified report accounting for that part of the non-union member's assessed service fees which it had asserted "were expended on matters not related to the costs of exclusive representation" during the previous year. The report would thereupon be made available only to those non-union members who requested a copy of the report from the International Union UAW in Detroit, Michigan in writing by certified mail. Upon the issuance of its report, the UAW would return to each non-union member who had timely filed an objection under the policy *his or her pro rata share of the amount* that the UAW had *unilaterally determined* to have been "expended on matters not related to the costs exclusive representation ... (plus accrued interest)."

At this juncture, any previously objecting employee who wished to contest the Union's unilateral determination could file an appeal, in writing, to the UAW International Executive Board or its designee in Detroit stating the basis for the objection by not later than May 1st of the year in question, even though the member would have no meaningful basis for evaluating the accuracy of the union's derivation of his or her pro rata share of the amount that the union claimed had been "expended on matters not related to the costs of exclusive representation." Upon a determination by the International Executive Board or its designee that the objection had been timely filed the Board or its designee would issue its disposition of the appeal within sixty days (on or before July 1 of the year following the initial objection). In the event that the appellant non-union member was dissatisfied with the Executive Board's determination, such dissatisfied appellant could, within 15 days after the issuance of the Executive Board's determination, (July 15) file an appeal, in writing, with the AAA. Otherwise, the decision of the Executive Board would be "final and binding."

If an appeal was duly entered invoking the services of the AAA within the designated 15 day period, the AAA would appoint a hearing officer from a panel of experienced labor arbitrators to resolve the controversy. Pursuant to the AAA's

---

**5.** Under the "advanced reduction of dues" method, the collective bargaining unit would impose upon objecting non-union members an agency fee less than the fee assessed against union members as union dues. This agency fee would be calculated upon a projected forecast of the proportionate share of collected agency fees allocated to costs related to collective bargaining. For example, if 85% of union dues were traditionally expended on collective bargaining expenses, a union employing the advanced reduction of dues method would charge non-union employees an agency shop fee representing 85% of union dues.

"Rules for Impartial Determination of Union Fees, effective June 1, 1986," a prospective arbitrator would be required to "disclose any circumstance likely to create a presumption of bias." Thereafter, the AAA could, in its discretion, disqualify the prospective arbitrator. In addition to the foregoing safeguards against bias or prejudice, any party to the arbitration could challenge the appointment of a prospective arbitrator for cause by promptly notifying the AAA of the reasons for the requested recusal. Once appointed, the arbitrator would be required to conduct hearings and dispose of the case by written decision within 60 days of the date on which the appeal had been properly filed. The arbitrator's decision would be final and binding on the participating parties.

Under the amended policy, any objector who had not filed an appeal by the May 1st deadline would not be entitled to an additional rebate. Funds remaining following the issuance of rebate checks would become the property of the UAW.[6] The remaining funds, representing monies contributed by non-union members who had taken timely appeal, would be distributed in accordance with the decision applicable to each appeal. The UAW reserved the right to terminate its policy at any time if permitted by law.

On October 2, 1986, the district court determined that the amended policy fully complied with the Supreme Court's decision in *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), and entered summary judgment for the Union. *Damiano v. Matish,* 644 F.Supp. 1058 (W.D.Mich.1986). On October 30, 1986, the trial court (1) granted plaintiffs' motion for an entry of final judgment pursuant to rule 54(b) concluding that the amended policy complied with the requirements of *Hudson;* (2) stayed all action on UAW's counterclaim for retroactive collection of service fees pending appeal; and (3) dissolved the preliminary injunction. The trial court granted in part and denied in part plaintiff's motion for an injunction pending appeal, enjoining the defendants from enforcing the policy prior to December 1, 1986, but permitting them to enforce the policy thereafter.

On October 31, 1986, plaintiffs filed an appeal to this court from the trial court's orders of October 2, 1986 and October 30, 1986. On November 12, 1986, this court granted plaintiffs' motion for an injunction pending appeal, stating that "the status quo should be maintained as it existed pursuant to the preliminary injunction entered by the district court on July 8, 1986." On appeal, plaintiffs argue that the District Court erred in holding that the union's amended policy did not infringe upon their rights of expression and assembly as guaranteed by the First and Fourteenth Amendments.

The Supreme Court has recognized that a union representing public employees has a right to require non-union members to contribute a fair share of the union's costs of negotiating, administering, and enforcing a collective bargaining agreement as a condition of employment. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 301, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986); *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977); *Tierney v. City of Toledo,* 824 F.2d 1497, 1502 (6th Cir.1987).[7] At the

---

**6.** On May 1, the funds in the escrow account representing contributions by non-members who have not appealed are transferred to the UAW. However, funds representing contributions from objectors who have appealed are maintained in the escrow account until the appeal process has been completed.

**7.** The costs which the union may appropriately recover from non-union employees as incident to the union's duties as the exclusive bargaining representative include "not only the direct costs of negotiation and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit," *Ellis v. Brotherhood of Railway Airline & Steamship Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984), including, for example, the "services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, [such as] may be required." *Abood,* 431 U.S. at 220, 97 S.Ct. at 1792.

same time, the Court has acknowledged that non-union employees have rights guaranteed by the First Amendment which are implicated by the expenditure of union funds. "[T]o require a non-union employee to pay the same union dues as a union member restricts that employee's First Amendment rights of association and expression, to the extent that employee does not consent to such representation." *Tierney*, 824 F.2d at 1502. In striking a balance between the rights of expression and assembly of the non-union employees and the union's right to be compensated for the costs of collective bargaining, the Supreme Court has held that while a union may validly collect fees to cover the costs related to collective bargaining, it may not coerce any objecting non-union member into supporting political or ideological views "unrelated to its duties as exclusive bargaining representative." *Hudson*, 475 U.S. at 302, 106 S.Ct. at 1073 (quoting *Abood*, 431 U.S. at 234, 97 S.Ct. at 1799); *Tierney*, 824 F.2d at 1502.

In *Hudson*, the Supreme Court recognized that certain procedural safeguards were required in such circumstances to adequately protect the constitutional rights of the non-union employees. *Hudson*, 475 U.S. at 302–03, 106 S.Ct. at 1074 (footnotes omitted); *accord Tierney*, 824 F.2d at 1502. "[T]he objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the union's ability to require every employee to contribute to the cost of collective bargaining activities." *Hudson*, 475 U.S. at 302, 106 S.Ct. at 1074 (quoting *Abood*, 431 U.S. at 237, 97 S.Ct. at 1800).[8] The Court found the procedure at issue in *Hudson* to be constitutionally deficient for three specific reasons: it permitted funds from objecting non-union employees to be applied for improper purposes; it failed to provide employees with sufficient information about the manner by which expenses were to be allocated between ideological and collective bargaining uses; and it failed to permit employees to challenge the fair share expenses which had been withheld.

■ Initially, because First Amendment rights are implicated, the method of calculating service fees for objecting employees adopted by the union must be narrowly drawn so as to "minimize both the impingement [upon the objectors' constitutional rights] and the burden [upon the exercise of those rights]." *Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077; *accord Tierney*, 824 F.2d at 1502. An examination of the Supreme Court's decision in *Hudson* clearly rejects the premise that a union may continue to collect a service fee equal in amount to the union dues once a non-union member has objected to such a procedure. Rather, the union must instead deduct from the service fee that amount which is undisputedly used for political or ideological functions.

> *Hudson* shows the Supreme Court's intention that, upon a non-member's objection, the union should not deduct any amount, for however short a time, which represents monies clearly expended for ideological purposes. The union simply cannot exact from the dissenter this proportionate amount and must instead allow him an advance reduction of that part of the union's fees immediately upon objection.

*Tierney*, 824 F.2d at 1504.

■ This advanced reduction method is clearly a less burdensome method of accommodating non-union employees who do not wish to have service fees used for purposes other than collective bargaining. *See, e.g., Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077 ("The appropriately justified advanced reduction ... [is] necessary to minimize both the impingement and the burden."); *cf. Ellis*, 466 U.S. at 444, 104 S.Ct. at 1890. Accordingly, this court con-

---

**8.** The burden is on the individual employee to object to expenditures by the Union for political or ideological purposes, since "dissent is not to be presumed." *Abood*, 431 U.S. at 238, 97 S.Ct. at 1801 (quoting *Machinists v. Street*, 367 U.S. 740, 774, 81 S.Ct. 1784, 1803, 6 L.Ed.2d 1141 (1961)). "[O]nly employees who have *affirmatively made known* to the union their opposition to political uses of their funds are entitled to relief...." *Id.* (emphasis added); *accord Tierney*, 824 F.2d at 1506.

cludes that once a non-union employee properly objects to the use of agency fees, the union is constitutionally required to calculate the service fees of such an employee using the advanced reduction method.

■ In the instant case, the amended policy would assess a service fee for non-union employees equal in amount to the dues charged to union members. This service fee would therefore include amounts which are undisputedly unrelated to the collective bargaining functions of the union, and which cannot be collected from objecting employees. Although 100% of the service fees would be placed in an interest bearing escrow account, this policy would unduly deny the employee's unqualified right to his property because it would insure that the dissenting employee could not use this property for his own preferred political, ideological or other elected purposes. "[W]e do not believe that [*Hudson*] was intended to enable the union to compel a non-consenting, non-union member to have any sum collected, even if placed in escrow, which would unquestionable represent ideological expenses of the union." *Tierney*, 824 F.2d at 1502–03. Because the amended policy does not employ the advanced reduction method, it thus fails to comply with *Hudson*'s requirements.

■ The second area of concern regards the procedure employed by the union to calculate the service fees of non-union employees. "Basic considerations of fairness, as well as concern for the First Amendment rights at stake, also dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee." *Hudson*, 475 U.S. at 306, 106 S.Ct. at 1076; *Tierney*, 824 F.2d at 1503. The union must therefore provide each non-union employee with adequate information in timely fashion to permit the member to enter an intelligent and informed objection to the use of his service fees if he desires.

As to the content of such information, the union must at the very minimum provide "adequate disclosure ... [of] the major categories of expenses" to provide non-union employees with sufficient information so as to enable them to make an intelligent choice. *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18; *Tierney*, 824 F.2d at 1503. This information must include those items relating to the union's duty as the exclusive bargaining agent, such as "expenditures for collective bargaining and contract administration that had been provided for the benefit of nonmembers as well as members," as well as funds expended for political or ideological purposes. *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18; *Tierney*, 824 F.2d at 1504. In addition, the union must inform the non-union employee as to the amount of the service fee, as well as the method by which that fee was calculated. *Hudson* also mandates the verification of the union's calculations and disbursements from the fund by means of an independent auditor. *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18; *Tierney*, 824 F.2d at 1504.

Moreover, the union must provide this information to each employee, without formal request and within a reasonable period of time, to permit the employee to evaluate the calculation of the fees in order to make a reasonable appraisal of the fees preliminary to exercising the option to enter an objection to the union's decision. "Leaving the nonunion employees in the dark about the source of the figure for the agency fee—and requiring them to object in order to receive information—does not adequately protect the careful distinction drawn in Abood." *Hudson*, 475 U.S. at 306, 106 S.Ct. at 1076; *Tierney*, 824 F.2d at 1504.

■ In the instant case, this court finds that the procedure adopted for providing non-union employees with information regarding the calculation of expenditures relating to the union's collective bargaining activities is constitutionally deficient for three reasons. First, the information initially provided by the Union failed to inform the non-union members of the actual amount of the service fee or how the fee had been calculated. Rather, the non-union employees had simply been notified that the service fee would be equal to the

amount charged to union members as union dues. Second, the non-union employees were forced to specifically request this information from the union. Third, the non-union employees were also required to object to the Union expenditures before the Union had even provided any information about the amount of the service fee, the method by which that fee had been calculated, or the major activities for which the fee would be used. As such, this procedure falls far short of the constitutional protections dictated by *Hudson*.

■ Finally, as to the procedure provided by the Union to permit dissenting non-union employees to challenge the calculation of the service fee, the Union must "provide for a reasonably prompt decision by an impartial decisionmaker ... to minimize both the impingement and the burden" on the dissenting employees' First Amendment rights, *Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077; *Tierney*, 824 F.2d at 1503, to afford such employees with "a fair opportunity to identify the impact of the governmental action on [their] interests and to assert a meritorious First Amendment claim." *Hudson*, 475 U.S. at 303, 106 S.Ct. at 1074 (footnote omitted).

In order to meet the requirement of providing an impartial decisionmaker, the Union must allow the non-union member "to have his objections addressed in an expeditious, fair, and objective manner." *Hudson*, 475 U.S. at 307, 106 S.Ct. at 1076 (footnote omitted); *Tierney*, 824 F.2d at 1503–04. In *Hudson*, the Supreme Court held that the procedure in question did not provide for an impartial decisionmaker because the decisionmaker was the unrestricted choice of one of the parties. 475 U.S. at 308, 106 S.Ct. at 1077; *accord Tierney*, 824 F.2d at 1507.

In the instant case, the amended policy provided that final decisions as to contested matters were to be determined by a labor arbitrator selected by the AAA rather than by either or both of the parties. While the Supreme Court has not specifically indicated whether the parties themselves must necessarily be involved in the selection of the decisionmaker, *see, e.g., Tierney*, 824

F.2d at 1507 & n. 3, the Court has indicated that use of "expeditious arbitration might satisfy the requirement ... so long as the arbitrator's selection did not represent the Union's unrestricted choice." *Hudson*, 475 U.S. at 308, n. 21, 106 S.Ct. at 1077 n. 21; *see also Robinson v. New Jersey*, 806 F.2d 442, 450 (3d Cir.1986) (three board panel selected by governor satisfied *Hudson*'s requirement), *cert. denied*, — U.S. —, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). In this case, where the amended policy provides that the selection of the arbitrator would be made by the AAA and not the Union, the procedure would thus seem to satisfy *Hudson* in this regard.

The plaintiff argued that the use of a decisionmaker selected by the AAA from a panel of qualified labor arbitrators would not satisfy the requirement of an impartial decisionmaker because there existed a possibility of bias in favor of union interests. The proofs presented by plaintiff in support of this contention were insufficient to raise a genuine issue of material fact in the instant case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Potters Medical Center v. City Hosp. Ass'n*, 800 F.2d 568, 572 (6th Cir.1986); *Kochins v. Lindin-Alimak, Inc.*, 799 F.2d 1128, 1134 (6th Cir.1986). The trial court was therefore justified in rejecting the plaintiff's arguments. *Damiano*, 644 F.Supp. at 1062.

Plaintiff has failed to suggest more than a generalized bias on the part of some members of the panel of prospective arbitrators. Courts have been hesitant to find that generalized attitudes or opinions would serve to disqualify an individual from serving as an impartial decisionmaker. *See Robinson*, 806 F.2d at 450; *cf. United States v. Story*, 716 F.2d 1088, 1090 (6th Cir.1983); *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1020 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1983). The Third Circuit rejected a similar argument, alleging bias on the part of a three member panel, where

the panel was selected by a detached third party.[9] *Robinson,* 806 F.2d at 450.

In the instant case, the AAA itself has defined specific policies to govern the selection of the arbitrator who would hear such challenges. Under its Rules for Impartial Determination of Union Fees, effective June 1, 1986, an arbitrator who has been tentatively selected to hear a challenge must "disclose any circumstances likely to create a presumption of bias." Thereafter, the AAA may elect, in its discretion, to disqualify that individual. In addition, any participant to the proceeding "may challenge an Arbitrator for cause by promptly notifying the AAA of [the] objection." Because the procedure adopted by the Union in this case would provide an opportunity for the participants to challenge the selection of a particular arbitrator for identifiable bias, and because the selection of the arbitrator would not be left solely to the discretion of the Union, this part of the Union's amended policy appears to meet the procedural requirements set forth in *Hudson.*

■ Although the policy would employ a neutral decisionmaker, it nevertheless failed to provide a procedure that would result in a reasonably prompt decision in resolving the objections of non-union members. As *Hudson* specifically noted, the requirement of providing a prompt resolution of such disputes is "necessary to minimize both the impingement and the burden." 475 U.S. at 309, 106 S.Ct. at 1077. Under the policy in the instant case, the pro rata amount of the service fee allocated to collective bargaining expenses would not be initially determined until some fourteen

months after the employee had first voiced an objection. If the employee exhausted his or her appeal, a final decision would not be forthcoming for another five months. The procedures adopted under the amended policy to entertain, administer and resolve non-union member objections were cumbersome, excessively protracted, and calculated to discourage meaningful objections to union activity.[10] As such, they certainly could not be characterized as expeditious within the teachings of *Hudson. See, e.g., Tierney,* 824 F.2d at 1507 ("[T]he current plan's provisions for the arbitrator to render his decision, which do not call for the dissenter to receive his refund until at least one year following his objection, are not 'reasonably prompt.'").

Accordingly, the judgment of the district court is reversed and this matter is remanded for the entry of summary judgment in favor of plaintiffs and for further proceedings not inconsistent with this opinion.

## APPENDIX A

### AGENCY FEE
### PAYER–OBJECTION POLICY

International Union, UAW ("UAW") has approved the following Policy governing objections by UAW-represented Michigan public employee agency fee payers, in the State of Michigan Classified Service, to the expenditure of their Service Fees for purposes not related to the costs of exclusive representation.

1. The Service Fee paid to UAW by non-UAW members shall be equal to the

---

9. In *Robinson,* non-union public employees had challenged the use of a three member panel appointed by the governor as the final decisionmaker. The governor was to appoint one member to represent the interest of public employers, one to represent the interests of public unions, and one to represent the public interest in general. The non-union public employees challenged this procedure as being constitutionally inadequate, alleging that there was a possibility of a generalized bias against non-union employees and that such bias might prevent the panel members from acting in a neutral and impartial manner. The Third Circuit rejected this argument and upheld the use of such a

panel, stating that "evidence of a generalized bias [would] be sufficient to establish a constitutional violation … 'only in the most extreme of cases.'" *Robinson,* 806 F.2d at 450 (quoting *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, ——, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986)).

10. "Procedures … must afford dissenting nonmembers a reasonable time to voice their objections and must not be framed so as to discourage the exercise of their First Amendment rights by intimidation or the imposition of unrealistic and excessively complex procedural requirements." *Tierney,* 824 F.2d at 1503.

membership dues for UAW members in the same bargaining unit.

2. The amount of the Service Fee, and a copy of this Policy, shall be distributed by the UAW upon implementation of this Policy, and each January 15th hereafter, to all agency fee payers in the unit(s) to which it applies.

3. Any non-member agency fee payer shall have the right to object to the expenditure of his/her Service Fee for purposes not attributable to the costs of exclusive representation by filing such objection in writing, addressed to Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214. Such objection shall be filed during the time period specified in Paragraph 7 herein.

4. Upon filing of such objection, the UAW will immediately deposit an amount equivalent to the Service Fees of the objector, for the month of filing and for all of the months following filing of the objection that remain in the UAW's fiscal year (which is the calendar year), in a separate interest-bearing account carried by the International Union, and will not expend such amount thereafter for any purpose, except as set forth herein. The interest rate with respect to the account will be eight and one-half percent for the UAW's 1986 fiscal year, and will be appropriately adjusted by the UAW for each new fiscal year to the prime rate of the Comerica, Inc. Bank, Detroit, Michigan on January 1st of each such new fiscal year.

5. At the end of each fiscal year, the UAW's expenditures shall be reviewed in order to establish, on a pro rata basis, what portion of the Service Fees charged to each agency fee payer in the unit(s) to which this policy applies were expended on matters not related to the costs of exclusive representation. The International Union, UAW will then prepare, by the 1st day of April following the close of the fiscal year, a report setting forth the results of this review with respect to that previous fiscal year. Such report will thereafter be made available to any agency fee payer who requests a copy. Such requests should be made in writing, by certified mail, return receipt requested, addressed to: Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson, Detroit, Michigan 48214.

6. Upon issuance of the report, the UAW will pay to each person who has timely filed an objection under this policy his/her pro rata share of the amount of Service Fees which have been expended on matters not related to the costs of exclusive representation (such pro rata share shall hereafter be referred to as the "Amount"), plus accrued interest.

7. Any agency fee payer who desires to file an objection pursuant to Paragraph 3 of this Policy shall file such objection within the first 30 days of the UAW's fiscal year, except that newly hired agency fee payer employees shall file such objection within the first 30 days following the application to them of any union security provision of any collective bargaining agreement. During fiscal year 1986 only, objections may also be filed no later than 30 days following distribution of this Policy pursuant to Paragraph 2 above.

8. Any agency fee payer who has timely filed such an objection pursuant to this Policy, and who claims that the Amount is not in accord with the standard set forth in Paragraph 5 of this Policy, may appeal the UAW's determination of the Amount. Such an appeal shall be commenced by filing such an appeal in writing with: Agency Fee Payer Objection Administration, International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214. Any such appeal must be filed no later than the 1st day of May following the issuance of the report required by Paragraph 5 of this Policy. The appeal shall state the basis for the claim that UAW's determination of the Amount is not in accord with the standard set forth in Paragraph 5 of this Policy.

9. An appeal filed under Paragrah [sic] 8 of this Policy shall first be considered by the International Executive Board of the UAW or its designee, which shall have the discretion to consolidate all appeals, and to require a hearing in determining the ap-

peals, or to determine appeals in such other manner as it deems appropriate. In all cases, the International Executive Board or its designee shall issue its determination as to the appeal within 60 days of the filing of the appeal, or, in the case of consolidated appeals, within 60 days of the filing of the last appeal so consolidated.

10. An appellant dissatisfied with the determination of the International Executive Board may further appeal that determination. Such an appeal must be filed, in writing, no later than 15 days after the issuance of the decision of the International Executive Board or its designee under Paragraph 9 of this Policy, or else such decision shall be final and binding. Any such appeal must be addressed to: Agency Fee Payer Objection Administration, Post-IEB Appeals, 8000 East Jefferson Avenue, Detroit, Michigan 48214.

11. All appeals filed pursuant to Paragraph 10 of this Policy will be referred to an impartial decisionmaker. Until further notice, all such appeals shall be referred by the UAW to the American Arbitration Association, pursuant to its "Rules for Impartial Determination of Union Fees effective June 1, 1986." The UAW will have the authority to have any or all such appeals consolidated before the impartial decisionmaker selected. The impartial decisionmaker shall issue his or her determination as to the appeals within 60 days of the filing of the last appeal so consolidated. The impartial decisionmaker's jurisdiction shall be limited to determining whether the Amount determined by the UAW with respect to the appellants is in accord with the standard set forth in. Paragraph 5 of this Policy. The determination of the impartial decisionmaker shall be final and binding.

12. All Service Fee amounts of objectors not paid to them pursuant to Paragraph 6 of this Policy will remain in the account referred to in Paragraph 4 of this Policy until the close of the period for filing an appeal to the International Executive Board set by Paragraph 8 of this Policy. If an objector timely files such an appeal, the amounts in the account referred to in Paragraph 4 of this Policy with respect to

such objector will remain in the account until final resolution of the appeal by the International Executive Board or any further appeal to the impartial decisionmaker, as the case may be, and then will be distributed to the UAW and the objector in accordance with the final decision on the appeal, with accrued interest. If no such appeal is filed by an objector with the International Executive Board within the time period established by Paragrah [sic] 8 of this Policy, then all remaining monies in the account with respect to the objector will be distributed to the UAW.

13. For the purposes of this Policy, "file", "filing", and/or "filed" means receipt by the recipient designated herein, after mailing by first-class certified mail, return receipt requested.

14. UAW reserves the right to further amend or modify this Policy, as it deems appropriate, to comply with then-applicable law, or to terminate this Policy, if permitted by then-applicable law.