887 F.2d 678
 132 L.R.R.M. (BNA) 2650, 58 USLW 2275,
56 Ed. Law Rep. 749
 Dennis GWIRTZ; Sarah Korns; Alan Siggelkow; Donald
Sowash; Doris Williams; James P. Chinni, On
behalf of themselves and others
similarly situated,
Plaintiffs-Appellants,
v.
OHIO EDUCATION ASSOCIATION, Defendant-Appellee.
 No. 88-4126.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 17, 1989.
Decided Oct. 11, 1989.
Rehearing and Rehearing En Banc Denied Nov. 28, 1989.
 
 James A. Calhoun, Mansfield, Ohio, Glenn M. Taubman (argued), National Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs-appellants.
 Bruce R. Lerner (argued), Robert H. Chanin, Bredhoff & Kaiser, Washington, D.C., Ira J Mirkin, Green, Haines, Sgambati, Murphy & Macala, Youngstown, Ohio, John A. Daily, Daily & Condrea, Akron, Ohio, for defendant-appellee.
 Before KEITH and MARTIN, Circuit Judges; GIBBONS, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Six nonunion public school teachers appeal the district court's judgment for the Ohio Education Association in this action brought pursuant to 42 U.S.C. Sec. 1983. The plaintiff teachers claim that their first amendment rights were violated by the defendant union's collection of fair share fees under a public employment collective bargaining agreement. We hold that the union's procedure in collecting the fair share fees from the plaintiffs is not constitutionally infirm and accordingly affirm the decision of the district court.
 
 I.
 
 2
 The plaintiffs, public school teachers in two districts in Ohio, declined to join the local education associations that are recognized as the exclusive bargaining representatives for all teachers in their respective districts. Under Ohio law, public employees within a bargaining unit who are not members of the unit's designated exclusive bargaining representative may be required to pay "fair share fees" to the exclusive representative and its affiliated organizations. Ohio Revised Code Sec. 4117.09(C). Pursuant to this provision of Ohio law, the local education associations sought to collect fair share fees from nonmember employees, including the plaintiffs, during the 1987-88 year.
 
 
 3
 To collect fair share fees from nonmembers, the local associations followed a procedure adopted by the Ohio Education Association, the affiliated state union of the local associations, in which certain financial information would be disclosed to all the nonmember employees required to pay fair share fees. The information disclosed to the nonmember employees included: (1) the audited basic financial statement of the Ohio Education Association; (2) an audited "Supplemental Schedule" setting forth the expenditures by the Ohio Education Association that were chargeable to nonmember employees and those expenditures that were not chargeable to nonmembers;[1] (3) the 1987-88 budget of the Ohio Education Association; and (4) the audited financial statement and "Supplemental Schedule" of the National Education Association, the affiliated national union of the local associations. The Supplemental Schedule of the Ohio Education Association provided to nonmember employees was issued pursuant to Statement Auditing Standard No. 29, which is one of the various standards issued by the Auditing Standards Board of the American Institute of Certified Public Accountants.
 
 
 4
 The plaintiffs filed suit against the Ohio Education Association on December 30, 1987, claiming that the association had violated their constitutional rights by failing to disclose adequate financial information prior to collecting fair share fees from them. More specifically, the plaintiffs alleged that the Association was constitutionally required to disclose its financial information with a "Special Report" issued pursuant to Statement on Auditing Standard No. 14, rather than with a Supplemental Schedule issued pursuant to Statement on Auditing Standard No. 29. On February 1, 1988, the plaintiffs also filed a motion for class certification, seeking to represent a class of all current and future nonmember employees who are required to pay fair share fees under their respective collective bargaining agreements.
 
 
 5
 The district court held a one-day evidentiary hearing on April 29, 1988, and issued its memorandum opinion granting judgment in favor of the Ohio Education Association on November 18, 1988 704 F.Supp. 1481. In its opinion, the district court made specific findings of fact and conclusions of law which generally concluded that, although the level of detail and the monetary precision on an Auditing Standard No. 14 Special Report are greater than on an Auditing Standard No. 29 Supplemental Schedule, the type of financial disclosure provided by the Association was sufficient. More specifically, the court found that both a Supplemental Schedule and a Special Report are "proper reporting mechanism[s] for the special subject matters such as the matter in this case" and that a Supplemental Schedule accompanying a basic financial statement is subjected to an independent audit because the basic financial statements, from which the Supplemental Schedule is derived, are subjected to detailed testing by auditors. Because the district court decided in favor of the Ohio Education Association, the court found it unnecessary to rule on the plaintiffs' motion for class certification. Plaintiffs filed a timely appeal to this court on December 6, 1988.
 
 II.
 
 6
 On appeal, the plaintiffs argue that the Ohio Education Association is constitutionally required to provide them with financial information audited at the "highest" available level of auditing service. According to the plaintiffs, the "low level" of audit service that the Ohio Education Association's auditors have performed does not insure that the chargeability or nonchargeability of the Association's fair share fees is accurately determined. The plaintiffs assert that the standard is the highest available level of audit service. They argue that this is the only way they can determine if the share fees are used appropriately. Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); Damiano v. Matish, 830 F.2d 1363 (6th Cir.1987); Tierney v. City of Toledo, 824 F.2d 1497 (6th Cir.1987).
 
 
 7
 We disagree with the plaintiffs' assertion that Hudson, Damiano and Tierney require a union such as the Ohio Education Association to engage its auditors to perform the "highest" possible level of audit service on financial information provided to payors of fair share fees who decline to join their designated exclusive bargaining representatives. Accordingly, we affirm the decision of the district court that the Association's disclosure of financial information to the plaintiffs is constitutionally sufficient.
 
 
 8
 In Hudson, the Supreme Court examined the procedures utilized by the Chicago Teachers Union to collect fair share fees from teachers who did not become members of the union. The Court held, in part, that the first amendment dictated that the nonmember teachers be given "sufficient information to gauge the propriety of the union's [fair share] fee." 475 U.S. at 306, 106 S.Ct. at 1076. The Court stated that the union must identify its expenditures for collective bargaining and contract administration for which the nonmember teachers could be charged a fair share fee, but noted that "absolute precision in the calculation of the [fair share fee] charge to nonmembers cannot be expected or required." Although a union "need not provide nonmembers with an exhaustive and detailed list of all its expenditures," the Court declared that "adequate" financial disclosure by a union "surely would include the major categories of expenses, as well as verification by an independent auditor." 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18.
 
 
 9
 In Damiano and Tierney, this circuit applied Hudson to cases involving nonunion member public employees who challenged the procedures followed by unions for collecting fair share fees from them. This court in Tierney found the procedure for the collection of fair share fees from nonmembers to be constitutionally infirm under Hudson because nonmembers were not, prior to the collection of fees from them, provided with detailed financial information concerning all major categories of union expenses that had been audited by an independent certified public accountant. 824 F.2d at 1506. Similarly, in Damiano, this court found the procedure implemented by a union to provide nonunion member employees with information regarding fair share fees to be constitutionally deficient under Hudson because (1) the information provided by the union failed to inform nonunion members of the actual amount of the fee or how the fee had been calculated; (2) the nonunion members had to specifically request the information from the union; and (3) the nonunion employees were required to object to the union's expenditures of the fees before the union had even provided any information about the fees. 830 F.2d at 1370-71.
 
 
 10
 Applying Hudson, Tierney and Damiano to the present case, we conclude that the district court did not err in determining the Ohio Education Association's financial disclosure to nonunion member employees to be constitutionally adequate. The Association furnished the plaintiffs with the budgets, audited financial statements and audited Supplemental Schedules of the Ohio Education Association and the National Education Association. Following an evidentiary hearing at which the parties offered expert testimony, the district court specifically found that: (1) the Auditing Standard No. 29 Supplemental Schedule was a proper reporting mechanism for special subject matters such as the matter in this case, and (2) the Auditing Standard No. 29 Supplemental Schedule was subjected to an independent audit because the financial statements from which the Supplemental Schedule is derived were subjected to detailed testing. Given these findings by the district court, which we must accept unless clearly erroneous,[2] we conclude that the type of financial disclosure provided by the Ohio Education Association meets the requirements of Hudson.
 
 
 11
 Under Hudson, a union must adequately explain the basis for a fair share fee and that "adequate" financial disclosure to nonunion members would include the major categories of expenses and verification by an independent auditor. 475 U.S. at 307 n. 18, 310, 106 S.Ct. at 1076 n. 18, 1077. The Ohio Education Association's financial disclosure is clearly adequate under Hudson because the Association disclosed its various types of chargeable and nonchargeable expenditures to the plaintiffs in a timely manner and because, as the district court specifically found, the Association's financial statements and its Supplemental Schedule were subjected to verification by an independent auditor.[3]
 
 
 12
 We reject the plaintiffs' contention that the Association's financial disclosure is inadequate under Hudson because the financial information disclosed was not audited at the "highest" level of audit service available or because the Association did not employ the "least restrictive" procedure imaginable to collect the fair share fees. The language in Hudson does not support this argument. Hudson stated that nonunion member employees must be given information "sufficient" to determine propriety of the union's fair share fee, but specifically noted that the union need not provide nonmember employees with an exhaustive and detailed list of all its expenditures and that "absolute precision" in the union's calculation of the fair share fees was not expected or required. 475 U.S. at 306, 307 n. 18, 106 S.Ct. at 1076, 1076 n. 18. Thus, Hudson does not mandate a union to utilize the most detailed and effective service available to audit the financial information disclosed to nonmember employees. Admittedly, an Auditing Standard No. 14 Special Report would, as the plaintiffs contend, give more detailed financial information to them than does the Auditing Standard No. 29 Supplemental Schedule currently provided by the Association. However, the mere fact that a Special Report would provide "better" or more detailed financial information does not make provision of a Special Report by the union constitutionally required. Hudson only requires that a union's procedures for collection of fair share fees provide "adequate" or "sufficient" financial disclosure so that nonmember employees such as the plaintiffs may "gauge the propriety of the union's fee." 475 U.S. at 306, 106 S.Ct. at 1076. We conclude that the Association's current financial disclosure is constitutionally sufficient under the standards established in Hudson.
 
 
 13
 We also reject the plaintiffs' assertion that this court's decisions in Damiano and Tierney require the Ohio Education Association to utilize the "highest" level of audit services in its financial disclosure to nonunion member employees. In Damiano and Tierney, we merely recited and then applied the standards in Hudson to the cases concerning procedures followed by unions for collecting fair share fees from nonmember employees.[4] In Damiano and Tierney we did not extend the analysis of Hudson or set any additional or more stringent standards that a union must meet in disclosing financial information to nonmember employees. Thus, because the financial disclosures of the Association to the plaintiffs satisfy the constitutional requirements of Hudson, the disclosures are also constitutionally sufficient under Damiano and Tierney.
 
 
 14
 Finally, we note that our decision in this case is in accord with the recent holdings of other circuits on the issue of financial disclosures to nonunion member employees. In Andrews v. Education Association of Cheshire, 829 F.2d 335, 340 (2d Cir.1987), the Second Circuit explicitly rejected the proposition, advanced by the plaintiffs here, that Hudson required a union's fair share fee collection procedures to "constitute at least restrictive process imaginable." The Second Circuit in Andrews and the Seventh Circuit in Ping v. National Education Association, 870 F.2d 1369, 1374 (7th Cir.1989), also agreed with our position, contrary to the contention of the plaintiffs in this case, that the role of the independent auditor under Hudson is to verify that a union such as the Ohio Education Association did in fact expend the amounts claimed for the various categories of activities, both chargeable and nonchargeable. The logic of the reasoning of these decisions supports affirmance of the district court's judgment that the Association's financial disclosure to the nonunion member plaintiffs is constitutionally adequate.
 
 
 15
 We agree with the conclusion of the district court that the type of financial disclosure provided to the plaintiffs by the Ohio Education Association under its fair share fee plan is constitutionally sufficient. We also agree that the district court did not err in refusing to rule on the plaintiffs' motion for class certification, Marx v. Centran Corp., 747 F.2d 1536, 1552 (6th Cir.1984), and, given our affirmance of the decision of the district court in favor of the Association, we decline to order the district court, as the plaintiffs seek, to now certify a class.
 
 
 16
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Fair share fees are "chargeable" to public employees who decline to become members of their designated exclusive bargaining representatives if the fees are expended by the union for activities germane to collective bargaining, contract administration or grievance adjustment. However, fair share fees are not chargeable to nonmember public employees if the fees are spent by the union for ideological or political activities. Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)
 
 
 [2]
 A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). After reviewing the record in this case, we cannot conclude that the district court's findings with regard to the Auditing Standard No. 29 Supplemental Schedule are clearly erroneous
 
 
 [3]
 On the question of "verification" by an auditor, we reject the plaintiffs' argument that the function of the independent auditor is to verify the union's calculation of the chargeable or nonchargeable nature of the major categories of union expenditures. Whether a union expenditure is "chargeable" or "nonchargeable" to nonmember employees is a legal determination that depends upon the type of union activity for which the expenditure is made. It is not the role of an auditor to make such a legal determination. Rather, an auditor's role is to verify the expenditures made by the union so as to ensure that the expenditures that the union claims it made for particular expenses were actually made for those expenses. Andrews v. Education Association of Cheshire, 829 F.2d 335, 340 (2d Cir.1987). Because the audit performed by an independent auditor in this case did so verify the expenditures of the Association, we hold that the audit met the constitutional standards of Hudson
 
 
 [4]
 We note that, although the unions' procedures were found constitutionally deficient in both Tierney and Damiano, the constitutional infirmities arose from aspects of the unions' procedures not at issue in this case. For example, in Damiano, the union had even failed to inform nonmember employees of the actual amount of the fair share fee or how the fee had been calculated. In Tierney, the union failed to provide audited financial information prior to the collection of the fair share fees. The financial disclosure procedures followed by the Association are clearly not deficient in such ways