131 F.3d 807
 156 L.R.R.M. (BNA) 3121, 97 Cal. Daily Op. Serv. 9135
 Carol J. KNIGHT; Leonard F. Ball; Robert M. Bird;
Rosemary K. Bird; Ann Marie Dahl; Joseph Dilley; Beverly
L. Edwards; Michael P. Heaphy; Gary John Horwath; James
K. Hunter; Michael E. Johnson; David McCord; Sally L.
Oelrich; Deanne P. Pokryfki; Donna L. Rehberg, Plaintiffs-Appellants,
v.
KENAI PENINSULA BOROUGH SCHOOL DISTRICT; Walter
Bromenschenkel, Superintendent; Helen Sibson;
Kenai Peninsula Education Association,
Defendants-Appellees.
Gary JEFFERSON; Eugene L. Dyson; David Johnson; Daniel L.
Hastings; Stephen A. McFerron, Plaintiffs-Appellants,
v.
KENAI PENINSULA BOROUGH SCHOOL DISTRICT; Walter
Bromenschenkel, Superintendent; Helen Sibson,
Director; Kenai Peninsula Education
Association, Defendants-Appellees.
Rebecca L. PATTERSON; Judy O. Weimer; Andrew J. Rabung;
Adolph Hinson; Emma L. Smith; Carole Gene
Murray; Marjorie Kyle, Plaintiffs-Appellants,
v.
ANCHORAGE SCHOOL DISTRICT; Robert Christal, Acting
Superintendent Anchorage School District; Leland C. Wilson,
Executive Director/Instructional Support Programs and
Certified Labor Relations; Anchorage Education Association;
NEA-Alaska, Defendants-Appellees.
Rebecca L. PATTERSON; Judy O. Weimer; Andrew J. Rabung;
Adolph Hinson; Emma L. Smith; Carole Gene
Murray; Marjorie Kyle, Plaintiffs-Appellees,
v.
ANCHORAGE SCHOOL DISTRICT; Robert Christal, Acting
Superintendent Anchorage School District; Leland C. Wilson,
Executive Director/Instructional Support Programs and
Certified Labor Relations, Defendants-Appellants,
and
Anchorage Education Association; NEA-Alaska, Defendants.
 Nos. 95-35848, 95-36283, 96-35166 and 96-35174.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1997.
Decided Dec. 8, 1997.
 
 W. James Young, National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia, for plaintiffs-appellants in Nos. 95-35848 and 95-36283.
 Jeremiah A. Collins, Bredhoff & Kaiser, Washington, DC, for defendant-appellee Kenai Peninsula Education Association in Nos. 95-35848 and 95-36283.
 Howard S. Trickey and Andrena L. Stone, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendants-appellees Kenai Peninsula Borough School District, Bromenschenkel, and Sibson in Nos. 95-35848 and 95-36283.
 W. James Young, National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia, for plaintiffs-appellants-cross-appellees in Nos. 96-35166 and 96-35174.
 Jeremiah A. Collins, Bredhoff & Kaiser, Washington, DC, for defendants-appellees Anchorage Education Association and NEA-Alaska in Nos. 96-35166 and 96-35174..
 Howard S. Trickey and Andrena L. Stone, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendants-appellees-cross-appellants Anchorage School District, Christal, and Wilson in Nos. 96-35166 and 96-35174..
 Appeals from the United States District Court for the District of Alaska; John W. Sedwick, District Judge, Presiding (Nos. 95-35848 and 95-36283), H. Russel Holland, District Judge, Presiding (Nos. 96-35166 and 96-35174). D.C. Nos. CV-94-00438-JWS, CV-94-00437-JWS, CV-93-00189-HRH.
 Before: WALLACE, JOHN T. NOONAN, JR., and THOMPSON, Circuit Judges.
 WALLACE, Circuit Judge.
 
 
 1
 In these three cases consolidated for appeal, we consider the often murky area of the rights and responsibilities of nonunion employees in the union shop context. Responding to issues decided by the district court, the nonunion employees and one of the public employers appeal from parts of the various judgments. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and we have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand all three cases.
 
 
 2
 * Nonunion employees may be required to pay unions for benefits they receive from union collective bargaining efforts. These three appeals involve this issue in the setting of school employees.A.
 
 
 3
 Knight (No. 95-35848) involves the Kenai Peninsula Education Association (KPEA), a collective bargaining unit for teachers in the Kenai Peninsula Borough School District. Jefferson (No. 95-36283) involves the Kenai Peninsula Educational Support Association (KPESA), which is the collective bargaining unit for school support staff in the Kenai Peninsula district. Patterson (Nos. 96-35166 and 96-35174) involves the Anchorage Education Association (AEA), the collective bargaining unit for teachers in the Anchorage School District. In all three cases, plaintiffs are nonunion members who, though not required to join the respective associations, must nevertheless pay a representation or agency fee because they benefit from the collective bargaining efforts of the associations. Alaska Stat. § 23.40.110.
 
 
 4
 In Abood v. Detroit Board of Education, 431 U.S. 209, 234-36, 97 S.Ct. 1782, 1799-1800, 52 L.Ed.2d 261 (1977), the Court held that, while nonunion members could be compelled to contribute to their share of costs of collective bargaining, they could not be compelled to contribute funds used to finance ideological causes not germane to collective bargaining. In Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (Hudson ), the Court set forth the minimum procedural protections for collection of agency fees: "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Id. at 310, 106 S.Ct. at 1078.
 
 
 5
 The unions and school districts in these cases have adopted similar procedures. At the beginning of the school year, the unions send a so-called "Hudson notice" that explains the breakdown between chargeable and nonchargeable expenses so that nonmembers can decide whether to object to paying for union activities that are not related to collective bargaining. Nonmembers who object have two options. They can accept the union's calculation of their share of chargeable expenses and receive a rebate equal to the percentage of full dues attributable to nonchargeable expenses. Alternatively, they can reject the union's determination, and submit to an arbitrator's calculation of the chargeable/nonchargeable expense breakdown. In that event, the nonmembers' payments are placed into an escrow account until the arbitration is completed.
 
 B.
 
 6
 On August 20, 1994, KPESA sent a letter to its nonmembers, asking them to fill out and return an attached form by September 15. The form sought, among other things, the desired method of payment for dues. KPESA provided no breakdown of chargeable and nonchargeable expenses and did not indicate that one would be forthcoming.
 
 
 7
 A day later, KPEA sent a letter to its nonmember teachers detailing the payment options for union dues or representation fees. This letter did not provide a breakdown of chargeable and nonchargeable expenses, but instead stated that one would be provided in October.
 
 
 8
 Knight and fourteen other teachers (Knight) and Jefferson and four other support staff members (Jefferson) filed their actions in district court on September 21, 1994. A month later, the school district refunded any money that nonmember teachers and support staff had paid as a result of the August 21 letter and stated that no deductions would begin until KPEA and KPESA had distributed the Hudson notice.
 
 
 9
 On November 10, 1994, KPEA sent a 116-page Hudson notice to all nonmember teachers. This notice consisted of an audited breakdown of 1992-93 expenses for the National Education Association (NEA) and NEA-Alaska, the parent units of KPEA, from which KPEA calculated the all-important ratio between chargeable and nonchargeable expenses which would then be applied toward the local KPEA dues to determine the appropriate local breakdown. KPESA sent the same notice to nonmember support staff.
 
 
 10
 Knight and Jefferson amended their respective complaints to include this subsequent mailing as an additional basis for liability. Both also sought certification of class actions. As of the date of the district court's decision, none of the Knight plaintiffs had paid any fee for the 1992-93 school year. Among the Jefferson plaintiffs, only Daniel Hastings had, and he is not before us.
 
 
 11
 In Knight, the district court entered summary judgment in favor of KPEA and the school district, holding that the KPEA's refund of monies received in response to the August letter mooted that issue, and that the November letter satisfied Hudson. The district court also held that KPEA's categorization of litigation expenses was not flawed, that the challenge to the use of an escrow fund to hold monies paid by challengers was moot, and that KPEA's indemnification of the school district for any legal liability incurred as a result of enforcing the collective bargaining agreement was not void as against public policy. In Jefferson, the district court relied upon the same analysis to reach the same results, except that the mootness ruling on the escrow issue did not apply to Hastings.
 
 C.
 
 12
 On September 11, 1992, AEA (through NEA-Alaska) sent a 230-page Hudson notice to teachers in the Anchorage School District. The notice did not include an audited AEA financial report, a breakdown of chargeable and nonchargeable expenses, or an audited breakdown of NEA-Alaska's chargeable and nonchargeable expenses. AEA later sent a supplemental notice that contained its audited financial statement.
 
 
 13
 Patterson and seven other teachers (Patterson) refused to pay the representation fee and sought to have the chargeability determination adjudicated in court. One of the teachers, Andrew Rabung, subsequently agreed to pay the full union membership fee when he was threatened with discharge. His subsequent efforts to withdraw that agreement were unavailing.
 
 
 14
 A different district judge of the District of Alaska held that the two mailings to the nonmembers failed to satisfy Hudson because the AEA used a "local unit presumption" (that is, a presumption that the local union will spend a larger percentage of dues on chargeable events than national organizations do, and hence use of the national chargeability breakdown is acceptable) instead of providing an audited breakdown. The court held that AEA's deduction-escrow-refund procedure complied with our precedents, and that the clause by which AEA indemnifies the school district for any liability incurred as a result of carrying out the collective bargaining agreement was not void as against public policy. The court denied Patterson's motion for class certification with leave to renew if the court's assessment that the motion was moot was erroneous. In a subsequent order, the court held that the appropriate remedy for the Hudson violation was to order arbitration. The court also held that the Anchorage School District owed Patterson a duty to review AEA's Hudson notice to ensure that the notice was satisfactory.
 
 II
 Knight (No. 95-35848)
 
 15
 Knight raises the following issues on appeal: (1) whether the August 21 letter complied with the requirements of Hudson; (2) whether the November 10 notice complied with Hudson; (3) whether KPEA discriminated against fee payers who challenged the chargeability determination compared to those who merely objected; and (4) whether the indemnification clause is void as against public policy.
 
 A.
 
 16
 The district court held that KPEA's prompt refund of monies paid in response to the August 21 letter "cured" all deficiencies in the letter. Therefore, the court deemed the entire matter of the August 21 letter to be moot.
 
 
 17
 We review a district court's determination of mootness de novo. Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1509 (9th Cir.1994). An issue will be deemed moot if the court is unable to fashion any effective relief under the circumstances. American Casualty Co. v. Baker, 22 F.3d 880, 895-96 (9th Cir.1994).
 
 
 18
 The August 21 letter was not a Hudson notice, as it failed to provide any breakdown between chargeable and nonchargeable expenses. It was, however, a clear demand for representation fees. The end of the letter read, "[i]t is imperative that you get the KPEA MEMBERSHIP/FEE AND AUTHORIZATION FORM completed, signed, and returned to Payroll at Central Office by September 15 so that payroll deductions can begin in a timely manner." (Emphasis added.)
 
 
 19
 The constitutional defect in this letter was not that it was an inadequate Hudson notice (it did not even purport to be such), but rather that it sought to collect representation fees without providing a reasonable explanation of the basis for the fee. The letter's statement that a Hudson notice would be forthcoming does not remedy the defect, because the letter required a response by mid-September, weeks before the Hudson notice was due to be distributed.
 
 
 20
 KPEA argues that its collection procedure complied with Grunwald v. San Bernardino City Unified School District, 994 F.2d 1370 (9th Cir.1993). In Grunwald, we upheld a school district's procedure of beginning payroll deductions for nonmember representation fees in September, even though the Hudson notices were not sent out until mid-October. We did so because, as a practical matter, the union could not reasonably identify teachers until after they had begun work for the academic year. Id. at 1376. But as soon as is practicable, the union must send out proper notices. See id. at 1375-76. That was not done here; therefore, Grunwald is inapplicable.
 
 
 21
 That none of the Knight plaintiffs paid the fee, or that KPEA refunded the monies received in response to the August letter is relevant to the amount of damages; however, it does not foreclose nominal damages, see Hohe v. Casey, 956 F.2d 399, 416 (3d Cir.1992) (Hohe ), and attorneys' fees pursuant to 42 U.S.C. § 1988 "unless there is some special circumstance which would justify the court's refusal." Topanga Press, Inc. v. City of Los Angeles, 989 F.2d 1524, 1534 (9th Cir.1993).
 
 
 22
 We reverse the district court's order holding that the challenge to the adequacy of the August 21 letter was moot. On remand, the district court is to enter judgment in favor of Knight and to determine whether nominal damages, declaratory relief, and an award of attorneys' fees are appropriate.
 
 B.
 
 23
 The district court entered summary judgment in favor of KPEA regarding the November 10 notice as well, holding that it satisfied Hudson because it provided sufficient information from which a nonmember could decide whether to object. We review a summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 
 24
 Knight argues that the November 10 notice was constitutionally defective for two reasons. First, KPEA provided two breakdowns of chargeable and unchargeable expenses, only one of which was audited. Second, KPEA's procedure for determining which expenses are chargeable and which are unchargeable is allegedly so vague that it virtually assures that nonmembers will be overcharged.
 
 
 25
 In Hudson, the Court required "that the potential objectors be given sufficient information to gauge the propriety of the union's fee." 475 U.S. at 306, 106 S.Ct. at 1076. Although "absolute precision" of the calculation is not necessary, "adequate disclosure [ ] include[s] the major categories of expenses, as well as verification by an independent auditor." Id. at 307 n. 18, 106 S.Ct. at 1076 n. 18.
 
 
 26
 The parties' dispute on appeal has focused on the chargeability breakdown for three categories of expenses for the 1992-93 school year: Legal Services, Membership and Affiliates, and Support and Overhead. For these categories, the figures in the audited NEA breakdown do not match those in the unaudited NEA-Alaska breakdown. For example, the NEA's audited budget for legal services was $20,543,978, of which $13,385,102 was deemed chargeable and $7,158,876 unchargeable. The unaudited NEA-Alaska breakdown listed the same overall figure of $20,543,978, but deemed $11,683,468 to be chargeable and $8,860,510 to be unchargeable.
 
 
 27
 KPEA contends that the disparity results from adjustments to the figures to take into account the local breakdown for NEA-Alaska. For example, the NEA legal services budget included $14,180,286 for a "Unified Legal Services Program," which was deemed 50 percent chargeable. However, NEA-Alaska determined that its reimbursement for this program was actually only 38 percent chargeable. Thus, KPEA adjusted the legal services breakdown.
 
 
 28
 The purpose of an audit is to have an independent accountant determine whether the union has actually spent the amounts of money it claimed to have spent on the chargeable activities. See, e.g., Dashiell v. Montgomery County, Maryland, 925 F.2d 750, 756 (4th Cir.1991) (Dashiell ); Gwirtz v. Ohio Education Association, 887 F.2d 678, 682 (6th Cir.1989) (Gwirtz ); Andrews v. Education Association of Cheshire, 829 F.2d 335, 340 (2d Cir.1987). In this case, the problem with the disparity in the figures between the audited and unaudited 1992-93 reports is that no independent accountant has determined whether KPEA actually spent the amounts it claimed to have spent on chargeable expenses in the unaudited report. KPEA contends that the unaudited report was generated through the use of two audited reports (the national NEA breakdown and a separate audited breakdown of local chargeable and nonchargeable expenses for the local portion of the national programs), and that there was no need for an auditor to confirm that KPEA had performed the mathematical adjustment correctly.
 
 
 29
 With the benefit of KPEA's appellate brief, we are able to confirm that the unaudited figure does result from the adjustment based on local figures. However, the purpose of a Hudson notice is not so that the federal courts can review the union's accounting after the fact; it is to provide the employee with "sufficient information to gauge the propriety of the union's fee." Hudson, 475 U.S. at 306, 106 S.Ct. at 1076. Thus, we must look at the form and content of the notice from the perspective of the employee at the time the employee receives it.
 
 
 30
 Having reviewed the November 10 notice carefully, we conclude that a teacher receiving KPEA's notice could not have determined that the unaudited figures were based on two sets of audited figures. Although the unaudited report contains three footnotes explaining the adjustments, there is no cross-reference to the audited local breakdown. For example, footnote 1 to the unaudited report explains that the chargeable portion of the Unified Legal Services Program was reduced from 50 percent to 38 percent. However, it is only with the aid of KPEA's appellate brief that we are able to determine that the 38 percent figure appears in the audited local breakdown. Even then, the subcategory is listed as "Employee Rights," not Legal Services. Without the brief, an employee would not have been able to connect the two audited reports.
 
 
 31
 Other courts have concluded that Hudson merely requires that the union provide sufficient information so that employees can decide whether to object, and that it does not require absolute precision. See, e.g., Dashiell, 925 F.2d at 756; Gwirtz, 887 F.2d at 682. However, KPEA's notice fails to meet even this standard, because nonmembers were not provided with sufficient direction to be able to determine that KPEA's expenditures were audited. Therefore, we hold that the November 10 notice did not satisfy Hudson.
 
 
 32
 Knight's second contention is that KPEA's standard for determining whether expenses were chargeable, as stated in the November 10 notice, was vague and overbroad. She challenges, for example, whether litigation KPEA has categorized as chargeable is germane to collective bargaining.
 
 
 33
 This argument demonstrates a fundamental misunderstanding of Hudson. There is a "clear distinction between the adequacy of a union's notice, addressed by the Supreme Court in Hudson, and the propriety of a union's chargeability determinations, considered separately by the Supreme Court in Lehnert [v. Ferris Faculty Association, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) ]." Jibson v. Michigan Education Association-NEA, "NEA, 30 F.3d 723, 730 (6th Cir.1994); see also Hudson v. Chicago Teachers Union, 922 F.2d 1306, 1314 (7th Cir.1991) (holding that the plaintiffs "mistakenly equate[ ] the adequacy of the notice with the accuracy of the fee assessment"). Knight's contention that she is not challenging factual determinations is unpersuasive and not supported by the cases on which she relies. In Abrams v. Communications Workers of America, 59 F.3d 1373, 1380 (D.C.Cir.1995), the notice was defective because it failed to inform employees that they could object, a factor not present in this case. In Hohe, 956 F.2d at 414, the court upheld the union's standard for chargeable costs by treating the challenge as one "to the propriety of the fair share fee," and not as the adequacy of notice. In Tierney v. City of Toledo, 824 F.2d 1497, 1505-06 (6th Cir.1987) (Tierney ), the court did not hold that the union's formulation of chargeable costs was "substantively erroneous"; the court held that the difference in formulation plans was "substantial."
 
 
 34
 We agree with the Sixth and Seventh Circuits that at the notice stage, we do not decide whether expenses are properly chargeable. Therefore, we vacate the portion of the district court's order in which it held that the contested litigation expenses were properly chargeable.
 
 C.
 
 35
 Next, Knight challenges KPEA's distinction between objectors, who receive an immediate refund of that portion of fees attributable to nonchargeable expenses, and challengers who must pay the full fee and wait for a refund. Knight also argues that the indemnification clause is void as against public policy.
 
 
 36
 We do not reach these issues. Knight's challenge to the distinction between objectors and challengers is moot, because an arbitrator has already affirmed KPEA's chargeability determinations for the academic year in question. Thus, Knight will be treated no differently whether she chooses to accept KPEA's chargeability determination or the arbitrator's.
 
 
 37
 Knight's argument that the indemnification clause should be voided as against public policy is not yet ripe. Whether an issue is ripe for determination is based on whether it is "fit for judicial decision" and "whether the parties will suffer hardship if we decline to consider the issues." San Diego County Gun Rights v. Reno, 98 F.3d 1121, 1132 (9th Cir.1996). Both considerations dictate that we deem this issue not ripe. Knight's argument is that the school district will feel freer to violate the constitutional rights of nonmember teachers due to the indemnification clause. This argument contains factual assertions that cannot be assessed on the current record. Cf. id. ("[P]ure legal questions that require little factual development are more likely to be ripe."). Moreover, the school district has not yet taken any action against Knight that would subject the teachers to any liability. Hence, Knight will not suffer any hardship if we do not reach this issue.
 
 III
 Jefferson (No. 95-36283)
 
 38
 Jefferson raises three issues similar to those of Knight: (1) whether the August 20 letter from KPESA complied with the requirements of Hudson; (2) whether the November 10 notice complied with Hudson; and (3) whether KPESA discriminated against fee payers who challenged the chargeability determination compared to those who merely objected.
 
 
 39
 We have set forth the applicable law in our analysis in Knight. We now apply those legal principles to the facts in Jefferson.
 
 A.
 
 40
 The August 20 letter from KPESA stated in part that "all employees, as a condition of employment, are required to either join KPESA as a full member or to pay a representation fee " (emphasis in original). The letter further asked nonmembers "to fill out the attached form and return it to Helen Sibson in payroll no later than September 15, 1994 " (emphasis in original). The attached form requested basic information in addition to a method of payment for membership dues or representation fees.
 
 
 41
 This letter is deficient for the same reason that KPEA's letter is deficient: it seeks payment of agency fees from nonmembers without providing any information regarding the chargeability breakdowns. Similarly, for the same reason that Knight's claim on this issue is not moot, this issue is not moot for Jefferson either.
 
 
 42
 We therefore hold that the district court erred in concluding that KPESA had cured all harm by refunding monies paid in response to the August 20 letter. On remand, the district court is to enter judgment in favor of Jefferson on this issue and to determine whether nominal damages, declaratory relief, and an award of attorneys' fees are appropriate.
 
 B.
 
 43
 The November 10 notice that KPESA mailed to its nonmembers suffers from the same infirmity that the KPEA notice does, because it uses the same NEA and NEA-Alaska breakdowns. Thus, the notice is deficient for the same reason that the KPEA notice is deficient.
 
 
 44
 Jefferson also challenges KPESA's standards for chargeability, contending that they are so vague that nonmembers are certain to be overcharged. We have already addressed this argument in Knight, and our analysis is equally pertinent here. We deal here only with notices, not with the issue of proper chargeability.
 
 C.
 
 45
 Finally, Jefferson challenges the deduction-escrow-refund procedure, contending that it unconstitutionally discriminates against nonmembers who challenge the chargeability determination by forcing them to wait longer than objectors to receive refunds. We have analyzed this issue in Knight, and for the same reasons, we dismiss this claim as moot.
 
 IV
 Patterson (Nos. 96-35166
 
 46
 and 96-35174)
 
 
 47
 The issues in this appeal are whether the district court erred in holding that (1) AEA's deduction-escrow-refund procedure complied with Grunwald v. San Bernardino City Unified School District, 994 F.2d 1370 (9th Cir.1993); (2) Patterson was not entitled to a full refund of all collected fees as a remedy for the defective Hudson notice; (3) Patterson had to arbitrate her damages; and (4) the class certification motion was moot. The issues on cross-appeal are whether (1) the school district had a duty to review the Hudson notice; and (2) the indemnification clause is void as against public policy.
 
 A.
 
 48
 As stated earlier, Hudson set forth three requirements that unions must satisfy before they can collect agency fees: "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." 475 U.S. at 310, 106 S.Ct. at 1078.
 
 
 49
 In this case, the district court held that the explanation provided to the nonmembers, along with the supplemental mailing, was deficient, a ruling that AEA has not appealed. Because it provided inadequate notice, AEA failed to satisfy Hudson 's requirements and was not entitled to the fees that it collected. Patterson is therefore entitled to relief.
 
 
 50
 AEA's argument that Grunwald applies here is unpersuasive for the reasons discussed earlier. Hence, we need not reach Patterson's argument that Grunwald conflicts with Dean v. Trans World Airlines, Inc., 924 F.2d 805 (9th Cir.1991).
 
 
 51
 We leave the measure of damages and the suitability of other relief for the district court to determine in the first instance. See Hudson, 475 U.S. at 310, 106 S.Ct. at 1077-78. The district court held, however, that the only relief available was a declaration of rights, and that other relief had to be arbitrated. We have not previously reached the issue of whether nonmembers can be forced to arbitrate a union's chargeability determinations before seeking relief in federal court. Other courts are divided on this issue. The Seventh and Tenth Circuits require "exhaustion," see Lancaster v. Air Line Pilots Association Int'l, 76 F.3d 1509, 1521-23 (10th Cir.1996) (Lancaster ); Hudson v. Chicago Teachers Union, 922 F.2d 1306, 1314 (7th Cir.1991), while the Third, Sixth, and D.C. Circuits do not. See Miller v. Air Line Pilots Association, 108 F.3d 1415, 1421 (D.C.Cir.) (Miller ), petition for cert. granted in part by, --- U.S. ----, 118 S.Ct. 554, 139 L.Ed.2d 396 (1997); Bromley v. Michigan Education Ass'n-NEA, 82 F.3d 686, 694 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997); Hohe, 956 F.2d at 409.
 
 
 52
 Those courts that have imposed an exhaustion requirement have done so for three reasons. First, Justice White's concurrence in Hudson suggested that "if the union provides for arbitration and complies with the other requirements specified in our opinion, it should be entitled to insist that the arbitration procedure be exhausted before resorting to the courts." 475 U.S. at 311, 106 S.Ct. at 1078 (White, J., concurring). Second, in the absence of an exhaustion requirement, "the procedure spawned by the Supreme Court [in Hudson would be] largely a waste of time and money." Lancaster, 76 F.3d at 1522 (alteration in original), quoting Bromley v. Michigan Education Association, 843 F.Supp. 1147, 1153 (E.D.Mich.1994), op. vacated, 82 F.3d 686 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Finally, not requiring exhaustion would lead to federal courts being "forced to micromanage the fee calculation in every case challenging a union assessment." Id.
 
 
 53
 These concerns are practical, but "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." Patsy v. Board of Regents of Florida, 457 U.S. 496, 513, 102 S.Ct. 2557, 2566, 73 L.Ed.2d 172 (1982). Congress imposed only a limited exhaustion requirement on actions brought under 42 U.S.C. § 1983, as this case was. The statute requires exhaustion only when brought by prisoners. Thus, mandating exhaustion in this case would not be consistent with congressional intent. See id. at 515-16, 102 S.Ct. at 2567-68.
 
 
 54
 We also agree with the D.C. Circuit, which found "no legal basis for forcing into arbitration a party who never agreed to put his dispute over federal law to such a process." Miller, 108 F.3d at 1421. Aside from Justice White's concurrence, Hudson made no mention of mandatory exhaustion. Indeed, in our view, such a requirement is inconsistent with Hudson.
 
 
 55
 Hudson imposed an obligation on unions and employers to provide for "a reasonably prompt decision by an impartial decisionmaker" so that nonmembers would have an alternative forum for redress than courts. 475 U.S. at 307, 106 S.Ct. at 1076. The Court seemed most concerned with ensuring that nonmembers be able to obtain a speedy resolution without having to endure lengthy and protracted litigation in court. To require nonmembers to exhaust arbitration before being entitled to file a federal court action would frustrate the intent of expediting the chargeability calculation and refund process.
 
 
 56
 We therefore hold that nonmembers are not required to exhaust union remedies to which they did not agree before challenging the chargeability determinations in federal court. The district court's order requiring arbitration of this issue is reversed.
 
 B.
 
 57
 Finally, Patterson argues that the district court erred in denying the motion to certify the class. We review a district court's denial of class certification for abuse of discretion. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233-34 (9th Cir.1996).
 
 
 58
 The court's order stated that "[t]he court is of the view that class certification in this case may very well have become a moot issue." Our holding with respect to the deficient notice and arbitration requires further proceedings in this case and necessarily implies that the case is not moot. Because a district court abuses its discretion when it makes an error of law, Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990), we reverse the district court's denial of the motion for class certification and remand so that the court can rule on the merits of the certification motion.
 
 C.
 
 59
 The Anchorage School District cross-appeals from the district court's ruling that it had "a duty to take reasonable precautions to make certain notice is sufficient and procedures are in place that protect the First Amendment rights of non-union members." We review the district court's summary judgment de novo.
 
 
 60
 The district court's holding regarding the scope of the duty owed by the school district was derived from four cases: Tierney, 824 F.2d at 1505; Jordan v. City of Bucyrus, Ohio, 739 F.Supp. 1124, 1126-27 (N.D.Ohio 1990); Mitchell v. Los Angeles Unified School District, 739 F.Supp. 511, 516 (C.D.Cal.1990); Dixon v. City of Chicago, 669 F.Supp. 851, 852-53 (N.D.Ill.1987). These cases, in turn, synthesized the scope of duty owed by school districts from Hudson, in which the Court held that the public employer "and union have a responsibility to provide procedures that minimize that impingement and that facilitate a nonunion employee's ability to protect his rights." 475 U.S. at 307 n. 20, 106 S.Ct. at 1076 n. 20. This holding, however, arose specifically in connection with the requirement of a reasonably prompt decision by an impartial decisionmaker. It does not deal with the notice issue. Indeed, nowhere in the section where the Court discussed the requirement of adequate information is there any indication that the employers owe any duty. See id. at 307 n. 18, 106 S.Ct. at 1076 n. 18 (requiring the union to provide Hudson notice to nonmembers, but not mentioning employers).
 
 
 61
 We are not persuaded that the school district owes a duty of reasonable review of AEA's Hudson notice before the notice is mailed. The notice is mailed directly from AEA to the nonmembers, and the school district does not get involved until AEA seeks to force a nonmember to pay a representation fee. This necessarily occurs at a substantially later time. At that later stage, the school district cannot take adverse action against the nonmember employee without first ensuring that the nonmember's constitutional rights were not violated by AEA. See, e.g., Tierney, 824 F.2d at 1504.
 
 
 62
 Therefore, we hold that the school district's duty to nonmembers is to evaluate the sufficiency of the union's notice at the time the union seeks to take action against a nonmember for failure to pay the agency fee, and not at the time of the initial mailing of the Hudson notice. This part of the district court's determination is reversed.
 
 D.
 
 63
 Finally, in opposition to the cross-appeal, Patterson argues for the first time that the school district's indemnification clause is void as against public policy. "[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief." International Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985). The fact that voiding the indemnification clause would not alter our analysis of the scope of the school district's duty indicates that this argument is not a response to the school district's issue on appeal, but rather a separate argument. Whether the indemnification clause should be voided is an issue that Patterson could have raised in her direct appeal. Because she did not, we deem it waived.
 
 
 64
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.